Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7695 | **DATE** | 4/19/2001 |
| **CASE TITLE** | Daniel vs. Northwestern Medical Faculty | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court grants NMFF's motion for summary judgment (16-1) and denies Daniel's motion opposing summary judgment (20-1). Judgment is entered in favor of defendant.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | APR 2 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 27 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOAN DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99 C 7695 |
| | ) | |
| NORTHWESTERN MEDICAL | ) | |
| FACULTY FOUNDATION, INC., | ) | DOCKETED |
| | ) | |
| Defendant. | ) | APR 2 4 2001 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Northwestern Medical Faculty Foundation, Inc., an academic group medical practice in Chicago, hired Joan Daniel, who is African-American, as a "coding and reimbursement technician" for its neonatology unit. After a couple of lateral transfers involving no grade increase, and a promotion, in 1994 Daniel became a "professional fee analyst" in NMFF's Professional Services Department. In 1995 and 1996, Daniel received "above average" performance reviews from her supervisor, April Cueller. None of the jobs Daniel held at NMFF carried any supervisory responsibilities.

In late 1996 and early 1997, NMFF's Professional Services Department merged with its Billing Department, and in March 1997, NMFF posted a vacancy notice for a "reimbursement supervisor" in the newly-merged department. The notice specified four criteria for the job: "[t]he individual must possess recent supervisory experience of two years. Graduate of an approved medical record program. Demonstrate coding proficiency by passing a coding test with 95% accuracy. Excellent communication skills (written and oral)." Defendant's Appendix, Exhibit

A(17); Plaintiff's Appendix, Exhibit A(12).

Daniel told Cueller, who happened to be listed as the contact person on the reimbursement supervisor vacancy notice, that she was interested in the job. Consistent with NMFF's internal policies, on March 5, 1997, Daniel completed a "Promotion/Transfer Eligibility Form," which, as its name suggests, listed certain requirements employees had to meet to be eligible for a promotion or transfer (to be eligible, employees had to have been in their current job 6 months, received "above average" or "outstanding" ratings on their most recent performance evaluations and received no written disciplinary actions in the last 12 months). Defendant's Appendix, Exhibit A(10); Plaintiff's Appendix, Exhibit A(6). On March 10, 1997, NMFF's human resources department processed Daniel's form, certifying that she satisfied all eligibility requirements. After Daniel applied for the reimbursement supervisor job, Cueller explained to her that the selection process would involve four steps: an initial one-on-one interview with Cueller; a "coding examination" in which the candidate would be asked to identify the proper diagnostic code for multiple medical conditions; a skills assessment; and a group interview with the director and managers of the Professional Support Services Department (Cueller, Albert Strickland, Ron Gomilla and Richard Nagengast).[1] Cueller also explained that the job would go to the candidate who scored the most total points after these four steps.

Kathleen McGovern, who is white and was the supervisor of professional fee support services at the time, was the only other employee to apply for the reimbursement supervisor job. McGovern, unlike Daniel, had recent supervisory experience at NMFF. She, like Daniel, filled

---

[1] Cueller is Hispanic, Strickland is African-American, Gomilla is Asian-American, and Nagengast is Caucasian. *See* Cueller Affidavit, ¶10 (Defendant's Appendix, Exhibit B).

2

out a Promotion/Transfer Eligibility Form, and the human resources department processed her form on March 19, 1997, certifying that she satisfied all eligibility requirements. Going into the fourth step of the interview process, Daniel had a one-point lead on McGovern; Daniel scored one-point higher than McGovern in both the coding examination and the interview with Cueller and one-point lower than McGovern in the skills assessment. But McGovern outscored Daniel in the group interview by sixty-eight points, giving her a higher overall score than Daniel; each of the four panel members scored McGovern higher than Daniel. On March 21, 1997, Cueller told Daniel that she had not been selected for the reimbursement supervisor position; McGovern officially took the post on March 31, 1997.

In April 1997 and April 1998, Daniel filed charges with the Illinois Department of Human Rights and the EEOC respectively, claiming that NMFF failed to promote her because of her race. The EEOC issued a right-to-sue letter, which Daniel received September 4, 1999. She filed this lawsuit on November 26, 1999 alleging discrimination in violation of both 42 U.S.C. §1981 and Title VII. NMFF has moved for summary judgment on both claims.

Before addressing the merits of NMFF's motion, we note for the record that the Seventh Circuit's mandate concerning notice to *pro se* litigants was satisfied in this case.[2] At the status hearing on January 4, 2001, NMFF told the Court it intended to file a summary judgment motion. The Court instructed NMFF to attach a copy of Local Rule 56.2 to its motion, and it did

---

[2]The Seventh Circuit has instructed that *pro se* litigants must be told (preferably by opposing counsel but, failing that, by the court) what Rule 56(e) requires, and they must be given a short, plain English warning that any factual assertion in the movant's papers will be taken as true unless contradicted by the nonmovant (through counter-affidavits or other documentary evidence) and that judgment, if appropriate, will be entered in favor of the moving party. *See, e.g., Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992).

3

so; in fact, both parties included a copy of the rule as an exhibit to their Rule 56.1 statements. *See* Defendant's Appendix, Exhibit C; Plaintiff's Appendix, Exhibit E.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must initially show that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Quinn v. National Railroad Passenger Corp.*, No. 97 C 3529, 1999 WL 637170, at *2 (N.D.Ill. Aug. 12, 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

NMFF argues that it is entitled to judgment as a matter of law on Daniel's Title VII discrimination claim because Daniel cannot show that NMFF's stated reason for giving the promotion to McGovern instead of her was a pretext for race discrimination. NMFF chose to "bypass" the question of whether Daniel can satisfy the elements of a prima facie case of discrimination. *See* Memorandum in Support of Defendant's Motion for Summary Judgment, p. 6. But we quickly consider it and find that Daniel probably can meet her burden in this regard. To prove a prima facie case of discrimination based on a failure to promote, Daniel must show that: (1) she applied for a promotion; (2) she was qualified for the promotion; and (3) the individual promoted had the same or lesser qualifications. *Bragg v. Navistar International Transportation Corp.*, 164 F.3d 373, 377 (7th Cir. 1998) (citing *McDonnell Douglas Corp. v.*

4

*Green*, 411 U.S. 792, 802 (1973)). The only real issue on this point concerns NMFF's suggestion that Daniel was not qualified for the promotion because she did not have "recent supervisory experience of two years" as specified in the job posting. But Cueller and the human resources department both certified Daniel as eligible for the reimbursement supervisor job, and NMFF allowed her to participate in the selection process knowing what her background was. From these facts, a jury could reasonably conclude that Daniel was, in fact, qualified to do the reimbursement supervisor job.

NMFF focuses its energies on the pretext prong of the *McDonell Douglas* burden-shifting method of proving discrimination, arguing that it has offered a legitimate nondiscriminatory reason for passing over Daniel for the promotion--namely that she scored fewer total points than McGovern in the four-step selection process. Though true, this argument does not really address Daniel's claim. Daniel concedes that she received fewer points in the selection process than did McGovern. But, she argues, the reason she received fewer points was that the group interview was specifically used and scored to skew the odds against African-American candidates; she argues that, where she and McGovern gave the same or similar answers, McGovern received a higher score simply because she is white. Though NMFF did not address this point, the Court reviewed the record and concludes that there simply is no support for Daniel's position.

At her deposition, Daniel identified specific questions in which she believed, based on the panel members' notes, that she and McGovern gave similar--though not identical--answers in response to the questions asked. *See* Daniel Deposition, pp. 95-106 (Plaintiff's Appendix, Exhibit A); *see also* Exhibit A(9)). Even if the Court accepts Daniel's assertion that she and McGovern gave similar answers to the questions in which she received a lower score, the record

5

contains no evidence to suggest that the discrepancy in scoring can be attributed to race discrimination. For example, one of the questions Daniel flagged asked each candidate how she defined doing a good job. In response to this question, both Daniel and McGovern said something about "feedback"; Cueller's notes for both candidates contain this word, as do Richard Nagengast's and Ron Gomilla's. *See* Exhibit A(9), pp. 12C, 12F, 12R, 12O, 12U, 12I. But the fact that both candidates mentioned the word "feedback" would not necessarily entitle them to the same score. The interviewers' notes, which reflect snippets of what the candidates said, offer no insight into how a particular interviewer arrived at a particular score. It is easy to imagine, however, given that the scoring process was admittedly subjective, the many variables other than race that could have played a role in each interviewer's score. The one-point difference could have been attributed to something else the candidate said in response to the question, or it could have been because Daniel was less sure of herself, less enthusiastic, less articulate or different in a whole host of ways having nothing to do with race. To avoid summary judgment, Daniel must provide evidence from which a jury could conclude not only that the panel scored her differently, but that it scored her differently because of her race. *See Friedel v. City of Madison*, 832 F.2d 965, 975 (7th Cir. 1987) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 804; *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 558-59 (7th Cir.1987); *American Nurses Association v. State of Illinois*, 783 F.2d 716, 722 (7th Cir. 1986)). Daniel's assertion that she was scored differently because of her race is conclusory and without support is not enough to create a genuine issue of fact. *Id.* Nor is the mere fact that Daniel is African-American and McGovern is white enough to create an issue of fact. *See Minority Police Officers Association v. South Bend*, 801 F.2d 964, 968 (7th Cir. 1986) ("The

6

mere fact that an employer fails to promote all black employees, while promoting some white and some black employees, does not create an inference of discriminatory purpose").

The group interview process was admittedly subjective. In fact, Al Strickland gave a statement in connection with Daniel's complaint stating that "[h]is only concern was that the grading system [was] too subjective opening the possibility for racial discrimination." *See* Plaintiff's Appendix, Exhibit A(21). But in the same breath Strickland stated that "the same criteria was used in evaluating [Daniel] and McGovern" and that "there was no indication that the interviewing group decision was racially motivated." *Id.* There is no evidence that anyone manipulated the evaluations or that any of the panel members considered Daniel's race in scoring her answers--on the contrary, the record contains statements from both Strickland and April Cueller that race played no role in the selection process. *See id.*; Defendant's Appendix, Exhibit B. NMFF, for whatever reason, decided not to give Daniel the reimbursement supervisor job; the burden is on Daniel to provide evidence from which a jury could conclude that that decision was the result of intentional discrimination and not on NMFF to prove the opposite. *See Minority Police Officers Association v. South Bend*, 617 F.Supp. 1330, 1357 (N.D. Ind. 1985).

The above analysis assumes that Daniel is challenging the group interview policy in the specific context of NMFF's decision not to offer her the reimbursement supervisor position, rather than making a broader claim that NMFF's promotional practices are discriminatory. But to the extent Daniel is alleging that NMFF's group interview policy had a disparate impact on non-whites, her claim fares no better. To establish a prima facie case, she would at least have to show that this aspect of NMFF's promotional process had a significant disparate impact on non-whites, *see Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657-58 (1989), and she has not

7

done so. Other than herself, she has not identified a single African-American employee who was denied a promotion because he or she came up short in the group interview.

In an attachment to her complaint, Daniel states:

> At the time of my complaint, Northwestern Medical Faculty Foundation had nearly 750 employees. There was only 1 black manager, no black practice managers, no black department administrators, 1 black division administrator, and no black department directors. There were 9 black supervisors; however, they were at a grade 10 or lower, except one. There were 103 management positions of a higher than grade 11. There were only 2 blacks out of the 103 management positions. These statistics enabled April Cueller to continue discriminatory hiring, interviewing and promotion practices.

*See* November 26, 1999 letter from Daniel, at p. 9. Without some additional information to give context (for starters, the number of African-American employees who were eligible for and interested in these positions), a trier of fact would have no basis to conclude that they show that NMFF's promotional practices had a disparate impact on African-Americans. Moreover, Daniel has not in any way linked these numbers to the group interview process she challenges in this lawsuit.

Finally, NMFF also moved for summary judgment on Daniel's §1981 discrimination claim, arguing that it is time barred. But because the above analysis applies with equal force to both the Title VII and the §1981 claims, *see Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 176 (7th Cir.1996) (citing *Pilditch v. Board of Education of City of Chicago*, 3 F.3d 1113, 1116 (7th Cir.1993), *cert. denied*, 510 U.S. 1116 (1994)), the Court need not reach the separate question of whether Daniel's §1981 claim is, in fact, time barred.

## CONCLUSION

For the reasons explained above, the Court grants NMFF's motion for summary judgment [16-1] and denies Daniel's motion opposing summary judgment [20-1]. The Clerk is directed to enter judgment in favor of defendant.

Dated: April 19, 2001

MATTHEW F. KENNELLY
United States District Judge